

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re<br><br>Rafael A. Jorge Peña<br>Daniel Santiago Rojas | 2012 TSPR 109<br><br>185 DPR ____ |

Número del Caso: CP-2002-15

Fecha: 5 de junio de 2012

Abogado del Querellado:
(Rafael A. Jorge Peña)

          Lcdo. Israel Delgado Ramos

Abogado del Querellado:
(Daniel Santiago Rojas)

          Por derecho Propio

Oficina del Procurador General:

          Lcdo. Luis Román Negrón
          Procurador General

          Lcda. Minnie H. Rodríguez López
          Procuradora General Auxiliar

Materia: Conducta Profesional – suspensión del Lcdo. Jorge Peña será efectiva el 21 de junio de 2012 y las suspensión del Lcdo. Santiago Rojas será efectiva el 29 de junio, fechas en que se les notificó a ambos abogados de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael A. Jorge Peña
Daniel Santiago Rojas

Conducta
Profesional

CP-2002-15

PER CURIAM

San Juan, Puerto Rico, a 5 de junio de 2012.

El licenciado Rafael A. Jorge Peña, en adelante, licenciado Jorge Peña, fue admitido al ejercicio de la abogacía el 9 de diciembre de 1970 y prestó juramento como Notario el 19 de marzo de 1971.[1] Por su parte, el licenciado Daniel Santiago Rojas, en adelante, licenciado Santiago Rojas, fue admitido al ejercicio de la abogacía el 16 de julio de 1998 y prestó juramento como Notario el 18 de agosto de 1998.

El 22 de noviembre de 1999 la Sra. Evelyn Mateo Santiago, en adelante, señora Mateo Santiago

---

[1] El 25 de enero de 2011 el licenciado Jorge Peña renunció voluntariamente al ejercicio de la Notaría.

o quejosa, instó una Queja contra los licenciados Jorge Peña y Santiago Rojas, relacionada con unas transacciones realizadas con una parcela de 2.88 cuerdas de terreno, parte de una finca de 11.1053 cuerdas, propiedad de la quejosa. La propiedad está ubicada en el Municipio de Humacao. En la Queja AB-1999-141, la señora Mateo Santiago alegó que el licenciado Santiago Rojas se apropió e inscribió a su favor la referida parcela con conocimiento de que le pertenecía a ella.

Evaluada la Queja instada, el Procurador General presentó una Querella sobre conducta profesional contra ambos letrados a raíz de una Queja instada en su contra. Procedemos a relatar los acontecimientos, según surgen del Informe del Comisionado Especial y del expediente sobre la gestión profesional de los licenciados Jorge Peña y Santiago Rojas y que motivaron se presentara la Queja.

I

Para el 27 de diciembre de 1984, Juan Burgos Maldonado era dueño en pleno y absoluto dominio de una participación adquirida a título de herencia de 2.88 cuerdas de terreno de una finca de mayor cabida compuesta de 11.1053 cuerdas, localizada en el Barrio Mariana 3 de Humacao.[2] El 27 de diciembre de 1984, Juan Burgos Maldonado vendió a la

---

[2] Véase estipulación de hechos consignada en los escritos sometidos por el Procurador General "Sometiendo Hechos Materiales" para el licenciado Jorge Peña, así como aquel sometido en cuanto al licenciado Santiago Rojas, ambos admitidos por estipulación de partes a todo efecto procesal y evidenciario con el alcance de una estipulación de hechos, así como la Determinación de Hecho Núm. 2 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

quejosa y su entonces esposo, Jesús Burgos Colón,[3] su participación de 2.88 cuerdas en la referida finca de mayor cabida. El precio convenido para la compraventa fue de $10,000.00.[4] Este Contrato fue otorgado ante el notario aquí querellado, licenciado Jorge Peña.[5]

El mismo día, luego del otorgamiento del referido Contrato, las partes contratantes acordaron que de las hijas del señor Burgos Maldonado regresar a residir en Puerto Rico, los compradores les cederían una porción de 0.88 cuerdas de las 2.88 adquiridas para que construyeran su casa. La señora Mateo Santiago y su entonces esposo Jesús Burgos Colón, estuvieron de acuerdo con las condiciones del referido Contrato de Compraventa y pagaron el precio de venta convenido de $10,000.00 al vendedor Juan Burgos Maldonado el 2 de enero de 1985.[6]

A tales efectos, el mismo día se redactó una Declaración Jurada por iniciativa del licenciado Jorge Peña, la que fue suscrita por la aquí quejosa, señora Mateo

---

[3] El señor Juan Burgos Maldonado era primo hermano del querellado licenciado Santiago Rojas. El querellado licenciado Santiago Rojas y la aquí querellante Evelyn Mateo Santiago también se conocían ya que este era pariente de su entonces esposo, Jesús Burgos, quien era sobrino de Juan Burgos Maldonado. Véase Estipulación 2 y 3 del escrito sometido por el Procurador General, *supra*, atinentes al licenciado Santiago Rojas.

[4] Véase Determinación de Hecho Núm. 4 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como las estipulaciones 3 y 4 del escrito sometido por el Procurador General, *supra*, atinente al licenciado Jorge Peña, y la estipulación Núm. 5 de aquel referente al licenciado Santiago Rojas.

[5] Afidávit Núm. 15,344.

[6] Véase Determinación de Hecho Núm. 9 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 6 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Santiago Rojas.

Santiago y su entonces esposo, Jesús Burgos Colón.[7] En lo pertinente, se consignó en la Declaración Jurada lo siguiente:

> "3.      En el mencionado contrato estamos adquiriendo por la suma de $10,000.00 la participación de dicha parte cedente y vendedora de 2.88 cuerdas en una propiedad inmueble consistente de una finca de 11.1053 cuerdas localizadas en el Barrio Mariana de Humacao.
>
> 4. …
>
> 5. Que en el referido contrato de Opción de Compra se hace constar que estamos adquiriendo 2.88 cuerdas de la finca principal antes mencionada; por este medio nos obligamos y comprometemos oportunamente y en su día a segregar 0.88 cuerdas de dicho solar, para traspasar dicho solar segregado a las hijas de la parte cedente y vendedora.
>
> 6. Que dicha segregación del solar de 0.88 cuerdas se efectuará si las hijas de la parte cedente y vendedora deciden regresar a Puerto Rico, toda vez que ellas nacieron y se han criado en la ciudad de Milwaukee del estado de Wisconsin".

Posteriormente, el 1 de octubre de 1986, la señora Mateo Santiago se divorció de su entonces esposo Jesús Burgos Colón mediante Sentencia emitida en el Caso Núm. RF86-1054, Tribunal de Primera Instancia, Sala Superior de Humacao. En la Sentencia de divorcio se dispuso que correspondería a la demandante en el referido caso y aquí quejosa, señora Mateo Santiago, la referida parcela de 2.88 cuerdas.[8]

---

[7] Afidávit Núm. 15,345.

[8] Véase Determinación de Hecho Núm. 10 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 7 del escrito

Por otro lado, el vendedor, señor Juan Burgos Maldonado, falleció el 5 de enero de 1990 en Milwaukee, Wisconsin. La declaratoria de herederos del señor Juan Burgos Maldonado fue tramitada por el querellado licenciado Jorge Peña, emitiéndose Resolución por el Tribunal Superior, Sala de Humacao, el 29 de abril de 1991.[9] Por virtud de esta se declararon como únicas herederas de dicho causante, a sus 5 hijas nombradas Esther, Aida Socorro, Mary, Lucy y Diana, de apellidos Burgos Ríos, y a su viuda Aida Ríos Maldonado en la cuota usufructuaria.[10]

Luego del fallecimiento del señor Juan Burgos Maldonado, su viuda llamó por teléfono a la demandante-quejosa, señora Mateo Santiago, para ofrecerle en venta la participación de 0.88 cuerdas de terreno en la parcela de 2.88 cuerdas que había sido por esta adquirida, la cual entendía le correspondía a sus hijas. Tal proposición fue rechazada por la señora Mateo Santiago, quien le indicó que era dueña de la totalidad de la parcela por haberla comprado a Juan Burgos Maldonado.[11]

Con estos antecedentes y por admisión propia del querellado licenciado Santiago Rojas,[12] como la señora

---

[9] Caso Núm. CS91-577.

[10] Véase estipulación 5 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Jorge Peña, así como la Determinación de Hecho núm. 13 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

[11] Véase Determinación de Hecho Núm. 14 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

[12] En ocasión de la vista plenaria del Caso Núm. HAC1997-0201.

sometido por el Procurador General, *supra*, atinente al licenciado Santiago Rojas.

Mateo Santiago se negó a comprar la mencionada participación de 0.88 cuerdas, la viuda del señor Juan Burgos Maldonado se comunicó con Daniel Santiago Rojas y se la ofreció en venta.[13] Finalmente, el 28 de diciembre de 1990, la viuda de Juan Burgos Maldonado, por sí y en representación de sus 5 hijas, y el aquí querellado licenciado Santiago Rojas, suscribieron ante el Notario aquí co-querellado licenciado Jorge Peña, un Contrato de Opción[14] de Compra sobre 0.88 cuerdas de terreno que le serían vendidas al querellado licenciado Santiago Rojas.[15] El Contrato de Opción de Compra fue suscrito sin el conocimiento y participación de la aquí quejosa. En el Contrato se hizo constar que las vendedoras eran dueñas en común pro-indiviso "de una participación adquirida a título de herencia de su esposo [y padre, respectivamente] fallecido Don Juan Burgos Maldonado, de punto ochenta y ocho (0.88) cuerdas" en la finca de 11.1053 cuerdas, siendo del conocimiento de ambos querellados que ese hecho no era cierto por cuanto conocían que Juan Burgos Maldonado había

---

[13] Según determinado por el Tribunal en el referido caso, "el demandado (Daniel Santiago Rojas) declaró haberse comunicado con la demandante (Evelyn Mateo Santiago) en alguna fecha que él no puede precisar, pero que fue entre dos (2) semanas y tres (3) meses antes del 28 de diciembre de 1990 y le informó de la oferta de la viuda de Juan Burgos Maldonado, pero que luego de esta comunicación no volvió a comunicarse con la demandante (Evelyn Mateo Santiago) hasta aproximadamente dos (2) semanas antes de que fuera emplazado en el caso el 6 de octubre de 1997. Véase Determinación de Hecho Núm. 14 de la Sentencia emitida en el caso Núm. HAC1997-0201.

[14] Affidávit Núm. 21,429.

[15] Véase las estipulaciones 9 y 10 del escrito sometido por el Procurador, supra, atinente al querellado Daniel Santiago Rojas, así como las Determinaciones de Hechos Núm. 16 y 18 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

vendido a la señora Mateo Santiago la parcela de 2.88 cuerdas que era todo cuanto él había heredado en esa finca.

Conocimiento tenían, además, que todo derecho de las hijas del causante en relación con la parcela de 0.88 cuerdas dependía de: (a) que regresaran a vivir a Puerto Rico; (b) que reclamaran dicha porción a la señora Mateo Santiago; y (c) que esta segregara y traspasara dicha porción de 0.88 cuerdas.[16]

Así las cosas, el 31 de octubre de 1991 el licenciado Jorge Peña, en representación de la sucesión de Juan Burgos Maldonado, suscribió y presentó una instancia en el Registro de la Propiedad bajo Afidávit, ante el notario Alfredo Torres Hernández,[17] para que se inscribiera en el Registro de la Propiedad a favor de los herederos de Juan Burgos Maldonado la participación que le correspondía a título de herencia en la finca que se describió en el mismo documento. En la instancia declaró bajo juramento lo siguiente:[18]

> "TERCERO: El causante era dueño en común proindiviso con otros herederos, hermanos de dicho causante, de una participación de una cuarta (1/4) parte o el veinticinco por ciento (25%) sobre la siguiente finca:
>
> > "RUSTICA: Parcela de terreno compuesta de 11.1053 cuerdas aproximadamente, localizada en el Barrio Mariana III de Humacao, Puerto Rico, en lindes por el

---

[16] *Id*. Afidávit Núm. 15,345.

[17] Afidávit Núm. 16,119.

[18] Véase la estipulación 7 del escrito sometido por el Procurador, *supra*, atinente al querellado Rafael A. Jorge Peña, así como la Determinación de Hecho Núm. 22 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

> Norte, con terrenos de Manuel F.
> Padilla; por el Sur, con terrenos de
> Eugenio Maldonado y Sucesión Burgos;
> por el Este, con Sucesión Burgos; y
> por el Oeste, con quebrada que la
> separa de los terrenos de Ángel Luis
> León, el E.L.A., Sucesión Santiago
> Burgos y con terreno de César
> Maldonado."

> CUARTO: Por este medio muy respetuosamente me
> permito solicitar del Honorable Registrador de la
> Propiedad de Humacao, que inscriba a favor de los
> herederos así declarados del causante la
> participación o condominio que pertenecía a éste
> en el inmueble anteriormente descrito, así como a
> favor de su viuda la cuota viudal usufructuaria
> que determina la ley sobre dicha participación."

Al tiempo en que el licenciado Jorge Peña juramentó dicha instancia, le constaba que a la fecha de la muerte del causante Juan Burgos Maldonado el 5 de enero de 1990 no tenía éste participación alguna en la referida finca, toda vez que ante él se otorgó el Contrato mediante el cual el causante vendió su participación total a la señora Mateo Santiago el 27 de diciembre de 1984.[19]

No conforme con lo anterior, el 23 de junio de 1992 el licenciado Jorge Peña autorizó las Escrituras Núm. 14 y 15, por virtud de las cuales protocolizó unos poderes previamente redactados por éste y otorgados ante notario por las hijas del causante en los Estados de California y Wisconsin. En estos poderes, las herederas del señor Juan Burgos Maldonado declararon bajo juramento tener una participación hereditaria de una cuarta parte (1/4) o un

---

[19] Véase Determinación de Hecho Núm. 23 de la Sentencia emitida en el Caso Núm. HAC1997-0201.

25% en la finca de 11.1053 cuerdas antes referida. Además, confirieron poder a la señora Aida Ríos Maldonado –viuda del causante- para adjudicar, adquirir y aceptar, vender, ceder, transferir y traspasar todos los derechos y acciones que poseían sobre dicho inmueble.[20]

Realidad indisputada es que el licenciado Jorge Peña conocía tanto al momento de redactar los documentos para que fueran juramentados en Estados Unidos como al momento de la protocolización de estos, que era falso lo por éstas atestado en el mismo a los efectos de que hubieran heredado algo de su padre en dicha finca. Según antes determinado, tenían conocimiento ambos querellados que el causante, padre de éstas, había vendido su participación a la quejosa, estando limitado en todo caso el interés de sus hijas a recibir de la señora Mateo Santiago una participación de 0.88 cuerdas en la eventualidad de que regresaran a Puerto Rico, lo que no había acontecido.[21]

En igual fecha y mediante Escritura Núm. 16, otorgada ante el Notario Jorge Peña, el 23 de junio de 1992, la viuda de Juan Burgos Maldonado, por sí y como apoderada de sus hijas, procedió a segregar de la finca de 11.1053 cuerdas antes referida la parcela de 2.8868 cuerdas. La finca, así segregada -que corresponde a la que adquirió la

---

[20] Véase Determinación de Hecho Núm. 24 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 8 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Jorge Peña.

[21] *Íd*.

quejosa quien compró del causante-, fue inscrita a favor de los herederos del señor Burgos Maldonado.[22]

A su vez, el mismo día, mediante Escritura Núm. 17 otorgada ante el Notario Jorge Peña,[23] la señora Aida Ríos Maldonado compareció nuevamente por sí y en representación de sus hijas. Aunque en el Contrato de Opción de Compra las partes pactaron sobre la transferencia de únicamente 0.88 cuerdas de terreno, en esta ocasión las partes acordaron transferir el dominio de la totalidad de las 2.88 cuerdas por la suma de $10,000.00. Tanto el Notario Jorge Peña como el también querellado licenciado Santiago Rojas conocían la falsedad del contenido de la Escritura Núm. 17.[24] Esta Escritura fue presentada en el Registro de la Propiedad el 29 de diciembre de 1994. Luego del trámite correspondiente, fue inscrita a favor del licenciado Santiago Rojas y su esposa Marina Díaz Delgado.[25]

Así las cosas, en el año 1997 la señora Mateo Santiago interesaba constituir una hipoteca sobre la finca de 2.88

---

[22]Inscrita en Registro de la Propiedad, Sección de Humacao, Folio 135 del Tomo 481, Finca Número 21,881, Inscripción Primera. Véase determinaciones de hecho 25 a 27 de la Sentencia emitida en el Caso Núm. HAC1997-0201, así como la estipulación 10 del escrito sometido por el Procurador General, *supra*, atinente al licenciado Jorge Peña.

[23] Véase las estipulaciones 13, 14 y 15 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Santiago Rojas, así como las estipulaciones 11 y 12 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Jorge Peña.

[24] Véase la estipulación 12 del escrito sometido por el Procurador General, *supra*, atinente al querellado licenciado Jorge Peña, así como las estipulaciones 14 y 15 de aquel sometido atinente al licenciado Santiago Rojas.

[25] Inscrita en Registro de la Propiedad, Sección de Humacao, Folio 135 vuelto del Tomo 481, Finca Núm. 21,881. Véase Determinaciones de Hecho núm. 29 y 31 de la Sentencia emitida por el Tribunal en el Caso Número HAC1997-0201.

cuerdas que había adquirido del señor Juan Burgos Maldonado según antes determinado, para lo cual buscó asesoramiento legal. En el proceso advino en conocimiento, para su sorpresa, que la misma estaba inscrita en el Registro de la Propiedad a favor del licenciado Santiago Rojas y su esposa. Al requerirle una explicación al licenciado Santiago Rojas, este la citó para una reunión en la oficina del licenciado Jorge Peña, a la que asistió, ocasión en que se le entregó copia de la Escritura Núm. 17.

Luego de la reunión sostenida con los querellados, la señora Mateo Santiago interpuso una acción civil sobre reivindicación en el Tribunal de Primera Instancia, Sala Superior de Humacao.[26] Luego del correspondiente trámite y vista plenaria del caso, el Tribunal dictó Sentencia -final y firme- declarando Con Lugar la Demanda interpuesta por la señora Mateo Santiago y No Ha Lugar la Reconvención interpuesta por el demandado y aquí querellado licenciado Santiago Rojas. Como base para así dictaminar resolvió, por admisión propia del demandado y aquí querellado licenciado Santiago Rojas, que "éste no solo nunca ha estado en la posesión de la cosa sino que siempre tuvo conocimiento de los defectos en el título de las personas de quienes pretendió adquirir el suyo", base para concluir que no le asiste derecho alguno como poseedor de buena fe.[27]

---

[26] Civil Núm. HAC-1997-0201.

[27] Véase Sentencia emitida en el caso núm. HAC1997-0201. En cuanto a este extremo dispone el Art. 293 del Código Civil, 31 L.P.R.A. sec. 1146, como sigue:

Además, dicho foro determinó que la señora Mateo Santiago era la legítima dueña por adquirir dicho inmueble de su otrora titular, Juan Burgos Maldonado de la finca de 2.8868 cuerdas que era objeto de disputa y controversia. Habiendo así dictaminado y figurando dicha parcela inscrita en el Registro de la Propiedad a favor de los demandados, el Tribunal de Primera Instancia ordenó la cancelación de la inscripción a favor del hoy licenciado Santiago Rojas y su esposa y la inscripción de la finca, así como la correspondiente inscripción a favor de la señora Mateo Santiago. El Tribunal de Primera Instancia impuso además las costas y honorarios de abogado. Además, el Tribunal de Primera Instancia en su Sentencia apuntó que

> aún cuando los hechos de este caso fueron cometidos por el Lcdo. Daniel Santiago Rojas antes que fuera admitido a la práctica de la profesión legal, atendido lo resuelto en In recurrido: Belén Trujillo, 128 D.P.R. 949, 959 (1991), el Tribunal entiende debe dar conocimiento de los mismos al Honorable Tribunal Supremo a fin de que determine lo que sea procedente respecto de su conducta, así como la del Lcdo. Rafael A. Jorge Peña, por lo que se ordena que por la Secretaría de este Tribunal se eleven los autos de este caso al Honorable Tribunal Supremo.

Recibida la referida Sentencia por este Foro,[28] la misma constituyó base para una nueva Queja en contra de los

---

Es poseedor de buena fe el que posee como propietario por virtud de un título suficiente en sus términos y condiciones para transferir la propiedad y cuyos defectos son ignorados por el poseedor. La posesión de buena fe cesa desde el momento en que el poseedor conoce por sí mismo los defectos del título, o mediante el juicio que estableciere el propietario de la cosa para reivindicarla.

[28] Dictaminó así que la demandante y aquí señora Mateo Santiago es la legítima dueña de la parcela de 2.88 cuerdas por ésta adquirida del

licenciados Santiago Rojas y Jorge Peña. Esta Queja fue consolidada con la Queja AB-1999-141 instada por la señora Matos por originarse ambas de unos mismos hechos bajo el número AB-2001-0002.[29]

Evaluada las Quejas y examinado el Informe del Procurador General sobre las mismas el 1 de noviembre de 2002 le ordenamos presentar las correspondientes Querellas. Así, el Procurador General presentó Querellas sobre conducta profesional contra los licenciados Jorge Peña y Santiago Rojas, en la que imputó violaciones a los Cánones 35 y 38 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35 y 38.[30]

---

señor Juan Burgos Maldonado. Además, ordenó al Registrador del Registro de la Propiedad de Puerto Rico, Sección de Humacao, procediera a cancelar en el Registro a su cargo la inscripción a favor de los demandados licenciado Santiago Rojas y su esposa Marina Díaz Delgado, para proceder luego a inscribir la misma a favor de la demandante y aquí quejosa; impuso las costas del litigio y honorarios a los demandados, disponiendo finalmente la procedencia de dar conocimiento a este Tribunal de los hechos y conducta incurrida por el aquí querellado licenciado Santiago Rojas, admitido a la práctica de la profesión legal luego de acontecer los hechos pertinentes al dictamen emitido, así como aquella incurrida por el licenciado Jorge Peña, según antes determinado.

[29] Presentada la Queja, el licenciado Santiago Rojas incoó debida contestación. No obstante, el 14 de enero de 2000, el Procurador General presentó Informe ante este Tribunal peticionando la paralización de los procedimientos. Descansó su solicitud en que la controversia que daba base a la referida Queja estaba siendo objeto de un proceso judicial sobre reivindicación ante el Tribunal de Primera Instancia, Sala de Humacao, en acción civil instada por la señora Mateo Santiago, como demandante, contra el licenciado Santiago Rojas y otros co-demandados (Caso Civil Núm. HAC-1997-0201). Este Tribunal paralizó todo trámite relacionado a la Queja.

[30] El Procurador General presentó los siguientes cargos:

PRIMER Y SEGUNDO CARGO-

El Lic. Rafael A. Jorge Peña violentó los principios enunciados en los Cánones 35 y 38 de los de Ética Profesional, 4 L.P.R.A. Ap. IX C.35, al aseverar en distintos documentos, en los cuales fungió como notario, hechos sobre los cuales conocía su falsedad faltando de esa manera a la fe pública notarial, a la preservación del honor, dignidad e integridad de la profesión de abogado.

El licenciado Santiago Rojas violentó los principios establecidos en los Cánones 35 y 38 de los de Ética Profesional, 4

Por su parte, el licenciado Jorge Peña sometió su Contestación a la Querella aduciendo, en síntesis, que su participación en los hechos que motivaron la Querella instada en su contra se circunscribían exclusivamente a su función como Notario por haber redactado y autorizado bajo su fe notarial varios documentos relacionados al negocio entre las partes concernidas. Expresó que lo anterior, a su juicio, era necesario a fin de lograr la inscripción del título de la finca en el Registro de la Propiedad. También adujo que no había ejercido su función notarial con el celo y cuidado que ello requería. De igual manera reconoció que no debió autorizar la Escritura de Compraventa al licenciado Santiago Rojas sin la comparecencia de la señora Mateo Santiago.

De la misma forma, el licenciado Santiago Rojas, quien para la fecha en que acontecieron los eventos no había sido admitido a la profesión de la abogacía, instó su alegación responsiva. Esbozó que la conducta alegadamente por él incurrida así como su omisión de ofrecer información correcta a la Comisión de Reputación de este Tribunal en los trámites realizados para tomar el examen de reválida de

---

L.P.R.A. Ap. IX C.35, al haber ofrecido información incorrecta a la Comisión de Reputación del Tribunal Supremo de Puerto Rico en los trámites para tomar el examen de reválida de abogado. La conducta de dicho letrado en relación a la compraventa del terreno objeto del caso HAC-1997-0201 Evelyn Mateo Santiago v. Daniel Santiago Rojas crea dudas sobre el compromiso de sinceridad, honradez y dignidad que impone la profesión legal a todo abogado.

abogado[31] descansaron en su mejor juicio y a los consejos legales de quienes lo asesoraron en todo momento. Sobre este punto, y reconociendo que al informar a la Comisión de Reputación de este Tribunal señaló que no había sido parte en ningún proceso judicial, cuando lo cierto era que meses antes de suscribir el formulario correspondiente había sido emplazado ya, alegó que no lo incluyó por considerar que la pregunta iba dirigida a procedimientos de naturaleza criminal.

Así las cosas, y comenzado el trámite, nombramos al Hon. Angel F. Rossy García como Comisionado Especial.

Sometido el caso ante nuestra consideración, y contando con los escritos que obran en el expediente, incluyendo el Informe del Comisionado Especial, resolvemos.

## II

Reiteradamente hemos señalado que los Cánones de Ética Profesional establecen las normas mínimas de conducta que rigen a los miembros de la profesión legal en el desempeño de su delicada e importante labor. *In re Birriel Cardona,* res. 5 de enero de 2012, 2012 T.S.P.R. 4, 2012 J.T.S. 17, 184 D.P.R.___(2012); *In re Muñoz, Morell*, 182 D.P.R. 738 (2011); *In re Torres Viñals*, 180 D.P.R. 236 (2010).

El Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX C. 35, impone a los abogados un deber de sinceridad y honradez ante todos. El mismo reza:

---

[31] Esto al omitir información relacionada con la presentación de la Demanda instada por la señora Mateo Santiago, luego de haber sido emplazado.

Canon 35-Sinceridad y honradez

La conducta de cualquier miembro de la profesión legal ante los tribunales para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada. No es sincero y honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho. Es impropio variar o distorsionar las citas jurídicas, suprimir parte de ellas para transmitir una idea contraria a la que el verdadero contexto establece u ocultar alguna que le es conocida.

El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar causas. El destruir evidencia documental o facilitar la desaparición de evidencia testifical en un caso también es altamente reprochable.

Al respecto, reiteradamente hemos expresado que la conducta de un abogado o abogada debe ser sincera y honrada frente a todos y ante todo tipo de acto. *In re Pons Fontana*, 182 D.P.R. 300 (2011). En esencia, se infringe este deber por el simple hecho de faltar a la verdad, independientemente de los motivos de la falsedad, pues no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o engañar. *In re Nieves Nieves*, 181 D.P.R. 25 (2011).

Hemos apuntalado que

"se infringe este deber deontológico con el hecho objetivo de faltar a la verdad en funciones propias de un abogado o cuando, actuando como ciudadano común se pretende realizar actos o negocios de trascendencia jurídica. Más que un ideal irrealizable la verdad es atributo inseparable de ser abogado y sin ello, la profesión jurídica no podría justificar su existencia" *In re Montañez Miranda*, 157 D.P.R. 275, 281 (2002).

Así hemos indicado que cualquier hecho que un Notario asevere en un documento público que no concuerde con la verdad, constituye una violación al Canon 35 de los de Ética, independientemente de si hubo intención de faltar a la verdad. *In re Tejada Rivera I*, 155 D.P.R. 175 (2001).

El Art. 2 de la Ley Notarial de Puerto Rico recoge el principio de la fe pública notarial. Sobre este particular, dicho precepto dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 L.P.R.A. sec. 2002.

Hemos señalado que la fe pública notarial es la espina dorsal de todo el esquema de autenticidad documental notarial. *In re Collazo Sánchez*, 159 D.P.R. 769, 774 (2003). El Estado le confiere a un documento autorizado por un notario una presunción de credibilidad y certeza de que lo afirmado en el mismo es cierto, correcto y concuerda con la realidad. *Íd.* A tales efectos, este Tribunal ha resuelto que al autorizar un documento, el notario da fe pública y asegura que ese documento cumple con todas las formalidades de ley. El notario asegura además que el documento es legal y verdadero, y que se trata de una transacción válida y

legítima. *In re Feliciano Ruiz*, 117 D.P.R. 269, 275 (1986).

Como corolario de lo anterior, el notario ejerce una función clave de inestimable importancia en los negocios jurídicos, toda vez que es custodio de la fe pública. Una vez el notario se aparta de cumplir con las obligaciones y deberes que le impone la ley y el ordenamiento ético, incurre en conducta que acarrea una sanción disciplinaria, ya que lesiona la confianza y la función pública en él depositada. Nuestro ordenamiento jurídico condena enérgicamente la participación consciente de un notario en el asesoramiento, redacción u otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. *In re Collazo Sánchez, supra*, págs. 773-774.

De lo anterior se colige que cualquier hecho aseverado en un instrumento público por un notario que no concuerde con la verdad constituye una violación al Canon 35, *supra*, independientemente de si hubo intención de faltar a la verdad. *In re Torres Villanueva*, 168 D.P.R. 185, 191 (2006). Se trata de una violación a la función central de custodiar la fe pública, conducta al margen de la ética del notario público, porque cuando ésta se quebranta necesariamente se falta a la verdad de los hechos. *In re Collazo Sánchez, supra*, pág. 774.

Recapitulando, el Canon 35, *supra*, obliga a los miembros de la profesión legal a observar una conducta

impregnada de sinceridad y honradez y prohíbe cualquier medio incompatible con la verdad. *In re Cuyar Fernández*, 163 D.P.R. 113, 117 (2004). Es por ello que condenamos enérgicamente la participación consciente de un abogado, como funcionario o parte, en el otorgamiento de documentos simulados o faltos de veracidad, independientemente del propósito que anime dicha conducta. "Tal conducta es incompatible con la función pública del notario y con las exigencias de veracidad y honestidad que esta función acarrea". *In re Collazo Sánchez, supra*, pág. 775.

Por otro lado, hemos resuelto que el Canon 38 de Ética Profesional le exige a todo abogado conducirse en forma que exalte la dignidad y el honor de su profesión. 4 L.P.R.A. Ap. IX C. 38. Según el propio canon, ello responde a la confianza depositada en el abogado como miembro de la ilustre profesión legal. *In re Sepúlveda, Casiano*, 155 D.P.R. 193 (2001).

Reiteradamente, al interpretar el referido precepto, hemos expresado que cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar, tanto en su vida profesional como en su vida privada, con limpieza, lealtad y el más escrupuloso sentido de responsabilidad. *In re García Aguirre,* 175 D.P.R. 433, 440-441 (2009); *In re Coll Pujols,* 102 D.P.R. 313 (1974).

Asimismo, la Junta Examinadora juega un rol esencial en el proceso de acopio de información. A ella le toca recibir toda aquella información que complementa la

solicitud de reválida y que luego se refiere a la Comisión de Reputación de manera que ésta pueda llevar su encomienda de evaluar a los aspirantes. *In re Reichard Hernández,* 180 D.P.R. 604 (2011); *In re Sepúlveda, Casiano*, *supra*.

Entre los formularios que cada aspirante tiene que completar se encuentra la Declaración Informativa. Hemos expresado que ésta "sirve, entre otras cosas, para obtener datos que puedan arrojar luz sobre las cualidades morales de cada aspirante". *In re Reichard Hernández,* supra, págs. 610-611; citando a L.M. Negrón Portillo, *Ética Profesional, Hato Rey*, Impresos Ayala, 1993, pág. 2.

Todo aspirante a abogado tiene el deber de ser honesto y sincero en su solicitud de admisión al foro. Este deber incluye, pero no se limita a, divulgar toda información que pueda arrojar luz sobre su carácter y aptitud para ejercer la profesión. En el cumplimiento de esta obligación, todo aspirante debe ser estricto consigo mismo, suprimiendo todo impulso de omitir información y ofrecer información falsa o engañosa en la Declaración Informativa. Cualquier incumplimiento con este deber se evaluará como una actuación deshonesta independiente a los hechos o la conducta omitida. *In re Reichard Hernández*, supra, págs. 612-613, 618. S. Steidel Figueroa, *Ética y Responsabilidad Disciplinaria del Abogado*, San Juan, Pubs. JTS, 2010, pág. 69.

En *In re Belén Trujillo*, *supra*, nos expresamos sobre la facultad de este Tribunal para investigar y disciplinar

a los abogados por actos u omisiones cometidos antes de ser admitidos al ejercicio de la profesión. En lo pertinente, resolvimos que este Tribunal tiene poder inherente para investigar y determinar si la conducta específica de una persona antes de ser abogado puede ser considerada para removerlo como tal.

Por último, la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A R.14, establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Por tanto, sus determinaciones fácticas merecen nuestra mayor deferencia. Ahora bien, de igual manera hemos resuelto que, aunque este Tribunal no está obligado a aceptar el Informe del Comisionado Especial nombrado para atender una querella contra un abogado, pudiendo adoptar, modificar o rechazar tal Informe, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre perjuicio, parcialidad o error manifiesto. *In re Torres Viñals, supra*.

Con estos preceptos en mente, atendemos la controversia ante nuestra consideración.

III

Un análisis de la prueba que fue objeto de estipulación en el caso que nos ocupa, nos lleva a concurrir con el Comisionado Especial a los efectos de que la conducta reiterada de los querellados y su proceder los llevó a incurrir en violaciones a los Cánones 35 y 38 de

Ética Profesional, *supra*. En busca de la mayor claridad, examinamos por separado la conducta de cada uno de los querellados, a la luz del Derecho antes esbozado.

A.

Lcdo. Jorge Peña

En el caso de autos surge de manera diáfana del expediente el conocimiento que tenía el licenciado Jorge Peña del interés propietario de la señora Mateo Santiago en la parcela de 2.88 cuerdas, por haberse otorgado ante este un Contrato de Compraventa, por virtud del cual el señor Juan Burgos Maldonado se comprometió a segregar y vender a la señora Mateo Santiago y su entonces esposo dicha parcela, correspondiente esta a su participación hereditaria en la finca original. Conocimiento tenía, además, del acuerdo alcanzado por las partes en igual fecha mediante el cual los compradores se obligaron a segregar de dicha parcela objeto del Contrato un solar de 0.88 cuerdas para las hijas del vendedor, condicionado a que éstas decidieran; acuerdo suplementario que fue por este redactado y luego suscrito ante él mediante Afidávit Núm. 15,345. Finalmente el licenciado Jorge Peña tenía conocimiento de que el referido Contrato se había consumado, habiendo satisfecho, los compradores el precio total acordado para compraventa de la referida parcela de 2.88 cuerdas y tomado posesión de la misma.

Habiéndose desprendido el señor Juan Burgos Maldonado de todo interés propietario sobre su participación

hereditaria en la referida finca luego de la compraventa a favor de la señora Mateo Santiago y su esposo, falleció el 5 de enero de 1990 en Milwaukee, es decir, aproximadamente seis (6) años luego de haberse consumado la referida transacción. Con estos antecedentes, el licenciado Jorge Peña, tramitó la Declaratoria de Herederos del señor Juan Burgos Matos, emitiéndose Resolución por el Tribunal Superior, Sala de Humacao el 29 de abril de 1991, declarando a sus 5 hijas como únicas herederas y a la viuda en la cuota usufructuaria.

Además, el 31 de octubre de 1991, el licenciado Jorge Peña suscribió una instancia bajo el Afidávit,[32] ante el Notario Alfredo Torres Hernández, para inscribir en el Registro de la Propiedad la participación que tenían los herederos del señor Juan Burgos Maldonado en la finca de 11.1053 cuerdas. Conforme determinó el Comisionado Especial, el licenciado Jorge Peña conocía que, a la fecha de su fallecimiento el señor Burgos Maldonado no tenía interés propietario alguno a dicha propiedad, ello luego de haber vendido su participación de 2.88 cuerdas el 27 de diciembre de 1984 a la señora Mateo Santiago y su esposo.

Según determinado, al autorizarse y suscribirse las referidas Escrituras de Protocolización de Poderes y Compraventa, el licenciado Jorge Peña conocía la falsedad del contenido de las mismas. Implícito en ello, el proceder espurio de éste al no dar conocimiento ni participación a

---

[32] Afidávit Núm. 16,119.

la señora Mateo Santiago en total perjuicio y menoscabo de sus derechos e intereses sobre dicha propiedad. Concluimos, en fin, que las actuaciones del licenciado Jorge Peña constituyen una violación a los Cánones 35 y 38 de Ética Profesional, *supra*.

B.

Lcdo. Daniel Santiago Rojas

De otra parte, y según determinado por el Comisionado Especial, el licenciado Santiago Rojas también tenía conocimiento de la titularidad de la señora Mateo Santiago sobre la referida parcela de 2.88 cuerdas, a quien le hizo un acercamiento en el año 1990 para comprarle la finca, el que fue rechazado expresándole ésta que no interesaba venderla.

Luego del fallecimiento del señor Juan Burgos Maldonado, su viuda se comunicó con la señora Mateo Santiago para ofrecerle en venta lo que entendía era la participación de sus hijas en la finca, a saber, el solar de 0.88 cuerdas, proposición que le fue rechazada de plano, invocando la aquí quejosa su derecho propietario sobre la totalidad de la finca de 2.88 cuerdas. Tal posición de la señora Mateo era también del conocimiento del licenciado Santiago Rojas. Fue en tales circunstancias que la viuda del señor Juan Burgos Maldonado le ofreció dicho solar en venta al querellado para discutir y aclarar cualquier extremo relacionado con dicho ofrecimiento de venta por parte de la viuda del señor Juan Burgos Maldonado.

La titularidad de la señora Mateo Santiago respecto a la finca de 2.88 cuerdas era de conocimiento del licenciado Santiago Rojas. Con estos antecedentes y teniendo pleno conocimiento del derecho propietario de la señora Mateo Santiago sobre la totalidad de la parcela de 2.88 cuerdas, el 22 de diciembre de 1990, el licenciado Santiago Rojas suscribió ante el Notario y aquí querellado, licenciado Jorge Peña, un Contrato de Opción de Compra sobre las 0.88 cuerdas. En el mismo compareció como vendedora la viuda de Juan Burgos Maldonado por sí y en representación de sus hijas y se hizo constar que la viuda y sus hijas eran dueñas en común proindiviso de una participación adquirida a título de herencia de 0.88 cuerdas de una finca de 11.1053 cuerdas, hecho que ambos querellados tenían conocimiento de su falsedad.

De igual forma, el licenciado Santiago Rojas suscribió las referidas escrituras con pleno conocimiento de la falsedad del contenido de las mismas. Con este proceder menoscabó los derechos e intereses de la quejosa sobre la propiedad en cuestión. Concurrimos con el Comisionado Especial en que las actuaciones del licenciado Santiago Rojas constituyen una violación al Canon 35 de Ética Profesional, *supra*.

Tampoco podemos ser indiferentes a la violación ética independiente por parte del licenciado Santiago Rojas. El licenciado Santiago Rojas mintió al proveer la información requerida en la Declaración Informativa requerida a todo

aspirante a tomar la Reválida de Abogado. En particular, en el inciso 2 de la Declaración Informativa, se le pidió que expresara si figuraba como demandante o demandado en algún procedimiento de naturaleza civil. Aunque este conocía para dicha fecha de la presentación del caso Núm. HAC1997-0201, toda vez que había sido emplazado, la contestación del licenciado Santiago Rojas a dicho requerimiento fue en la negativa. Así pues, el licenciado Santiago Rojas ocultó esta información para privar a la Comisión de Reputación de la oportunidad de considerar las alegaciones de la demandante en el referido caso, para el descargo de su encomienda y responsabilidad ministerial. En el caso particular del licenciado Santiago Rojas, su omisión de no suplir información exacta y completa en la solicitud como parte del proceso de evaluación por la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía, alcanza también una infracción al deber de sinceridad y honestidad que rige la profesión de la abogacía. Véase *In re Reichard Hernández*, *supra*, págs. 612-613, 618.

En el caso que nos ocupa un análisis y evaluación de la prueba **aportada y estipulada** en el proceso nos mueve a concluir que los licenciados Jorge Peña y Santiago Rojas con su conducta y proceder según consignada *ante*, quebrantaron los deberes de respeto, honor y dignidad que todo abogado le debe no sólo a las instituciones relacionadas con la administración de la justicia, sino a la sociedad puertorriqueña, violando así los Cánones 35 y

38, *supra*. La conducta mendaz exhibida por los licenciados Jorge Peña y Santiago Rojas, la impropiedad de sus acciones, la falta de sinceridad y honradez en perjuicio de los derechos de la quejosa y la justicia, son factores que deben ser considerados en la determinación de la sanción disciplinaria a imponerse.

IV

Resta ahora determinar la sanción que debemos imponer a los licenciados Jorge Peña y Santiago Rojas. Para imponer una sanción disciplinaria a un abogado por conducta impropia, es necesario considerar el historial previo del abogado; si éste goza de buena reputación; la aceptación de la falta y su sincero arrepentimiento; si su conducta se realizó con ánimo de lucro; y cualquier otro factor pertinente a los hechos. *In re Rodríguez Lugo*, 175 D.P.R. 1023, 1032 (2009).

En lo atinente al licenciado Jorge Peña, este acreditó mediante una Declaración Jurada que fue admitido a la profesión de abogado en el año 1970, ejerciendo la profesión por treinta y nueve (39) años, "sin tener problemas ni conflictos con ningún juez, cliente o compañero abogado"; que renunció a la práctica de la Notaría desde el 2011;[33] así como que desde ese mismo año no ha ejercido como abogado. Sometió, además, Declaraciones Juradas de los licenciados Reynaldo de León Martínez y José

---

[33] Mediante Resolución de 4 de febrero de 2011, su obra Notarial fue aprobada y entregada al Archivo general de Protocolos del Distrito Notarial de Humacao.

I. Rosa Carromero, así como del señor Pedro Miller Sánchez, su vecino, a los fines de establecer que a juicio de éstos, el licenciado Jorge Peña "goza de buena reputación en la comunidad humacaeña".

A la luz de lo anterior, se podría cerrar este capítulo con una censura enérgica. Sin embargo, no podemos seguir este derrotero. Un estudio del expediente revela que ambos licenciados durante el trámite disciplinario **estipularon la totalidad de los hechos materiales propuestos por el Procurador General en sus escritos** ante nos. A su vez, según señalado por el Procurador General, **las estipulaciones de las partes quedan suplementadas por las determinaciones de hechos consignadas en la Sentencia emitida en el Caso Núm. HAC-199700201.**

Hemos revisado la contestación del licenciado Jorge Peña a la Querella incoada. En dicho escrito, aunque reconoce que no se debió autorizar la Escritura de Compraventa sin la comparecencia de la quejosa, hace abstracción de su conocimiento de la realidad jurídica de la titularidad de la parcela de 2.88 cuerdas en controversia y donde la quejosa le pagó al señor Burgos Maldonado, anterior titular de la finca, la suma de $10,000, así como de la falsedad de lo que consignó en el Contrato de Opción de Compra suscrito por el licenciado Santiago Rojas el 22 de diciembre de 1990 y documentos posteriores autorizados bajo su fe notarial. Aseveró en

dichos documentos realidades jurídicas que le constaban eran falsas.

En cuanto a lo atinente al licenciado Santiago Rojas, en su contestación a la Querella hizo abstracción de su conocimiento de la falsedad del contenido de los documentos por él suscritos bajo juramento ante el licenciado Jorge Peña. A su vez, nos preocupa grandemente el constante "patrón de mendacidad" que apunta el Comisionado Especial.

V

Por los fundamentos antes expresados, suspendemos al licenciado Jorge Peña del ejercicio de la abogacía por término indefinido a partir de la notificación de la presente Opinión *Per Curiam*. El licenciado Jorge Peña tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por otra parte, suspendemos al licenciado Santiago Rojas del ejercicio de la abogacía y la notaría por término indefinido, a partir de la notificación de la presente Opinión *Per Curiam*. El licenciado Santiago Rojas también tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a

éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Santiago Rojas y entregarla a la Oficina de la Directora de Inspección de Notaria para la correspondiente investigación e informe.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Rafael A. Jorge Peña
Daniel Santiago Rojas

Conducta
Profesional

CP-2002-15

SENTENCIA

San Juan, Puerto Rico, a 5 de junio de 2012.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, suspendemos al licenciado Jorge Peña del ejercicio de la abogacía por término indefinido a partir de la notificación de la presente Sentencia. El licenciado Jorge Peña tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del

término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por otra parte, suspendemos al licenciado Santiago Rojas del ejercicio de la abogacía y la notaría por término indefinido, a partir de la notificación de la presente Sentencia. El licenciado Santiago Rojas también tiene el deber de notificar a todos sus clientes de su inhabilidad para continuar representándoles y devolverá a éstos los expedientes de los casos pendientes así como los honorarios recibidos por trabajo no realizado. Deberá también informar oportunamente de su suspensión a los foros judiciales y administrativos del país. De igual forma, debe certificar a este Tribunal dentro del término de treinta (30) días el cumplimiento con lo aquí dispuesto.

Por último, el Alguacil de este Tribunal deberá incautar la obra y el sello notarial del licenciado Santiago Rojas y entregarla a la Oficina de la Directora de Inspección de Notaria para la correspondiente investigación e informe.

Notifíquese personalmente.

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez no intervino.


                              Aida I. Oquendo Graulau
                            Secretaria del Tribunal Supremo